## Ex parte TEESE.

Under the act of the 31st of March, 1836, entitled "An act in relation to Duquesne Way, in the city of Pittsburgh," the report of the viewers appointed to assess damages *must be made* to the *next* term. When, therefore, the report is not so made, the power, under the order of the Court of Quarter Sessions, drawn pursuant to the express directions of the act, is expended, and must be renewed by a new order, or the original order continued upon application to the court; and if this practice be not pursued by the petitioner, he loses his remedy for damages.

CERTIORARI to the Court of Quarter Sessions of Alleghany county.

*Sept.* 22. On the 6th day of April, 1839, William Teese presented his petition to the Court of Quarter Sessions of Alleghany county, setting forth, that the councils of the city of Pittsburgh, in pursuance of an act of Assembly, passed the 31st day of March, 1836, and of an ordinance of said councils directed by said act, had authorized the opening of Duquesne Way along the Alleghany river, in said city, which, according to the location adopted by said councils, would greatly encroach upon and injure the property of said petitioner, situated at the corner of Hand Street and the Alleghany river; and praying the court to appoint twelve discreet and disinterested persons to inquire, upon actual view of the premises, what damages would be sustained by the said petitioner, by reason of the opening of the said way, and *that they report to the next term of the court.* Whereupon, the court, on the same day, granted the prayer of the petitioner, and appointed "George R. White and eleven others to inquire on actual view of the premises, whether any, and if any, what damages will be sustained by the said William Teese, (the said viewers having been first duly sworn and appointed,) *and to make report to the next term of this court.*" Under the twenty-ninth and forty-sixth sections of the act of the 14th of April, 1834, the Court of Quarter Sessions of Alleghany county commences on the several days and months appointed for the commencement of the Courts of Common Pleas of said county, viz., on the fourth Monday in March, the third Monday in June, and the fourth Mondays in October and December of each year, and continues during the same time. In this case, therefore, the viewers were appointed at the March Term, and the act of Assembly of the 31st of March, 1836, as well as the order of the court made pursuant to the express directions of the act, required the viewers to make their report to the *next*, or June Term, 1839, of the court. It appeared by the paper-book, that the report was not made to the June Term. But it also appeared, that subsequently, viz., at October Term, (the year is not disclosed by the paper-

book,) the court, on motion, appointed Francis G. Bailey, and two others, in the place of two of the former jurors deceased, and of one who had removed out of the state, and directed the jury to report at the next term (December) of the court.   On the 16th of December, 1845, the court again, on motion, appointed and substituted John Morrison, William Lavimer, and James B. Irwin, jurors, in the place and stead of Samuel Roseburgh, Thomas Liggett, and Alexander Laughlin, jurors before appointed by the court, and who could not attend.  On the 22d day of December, 1845, the report of the viewers was filed.  On the 9th of January, 1846, the following exceptions to the report were filed:

1. The viewers had no authority to act in this case.   They were bound by their appointment to report to the June term of the Court of Quarter Sessions of 1839.

2. The court had no power to fill vacancies in the jury of viewers.

3. By not proceeding at the proper time, the petitioner has lost his remedy for damages, if he have suffered any.

4. All the proceedings in this case, since March Term, 1839, are irregular and void.

The court sustained the exceptions, and set aside the report and assessment of damages.   To this decision of the court, William Teese, the petitioner, excepted, and the court sealed a bill of exceptions.   William Teese, thereupon, sued out this certiorari, and assigned as error here, that the court erred in sustaining the exceptions, and setting aside the report and assessment of damages.

*McCandless* and *McClure*, for Teese.   It will be contended in this case, that the jury should have made their report to the next term after their appointment.   In the first place, this was impossible, as two of the jurors died, and one left the state, between the time of their appointment and the next succeeding term.   We proceeded with as much rapidity as possible under the circumstances. Many of the jurors, unfortunately for us, were men deeply engaged in business, and could not be induced to give their attendance. We had no power to coerce their attendance.   Besides, here was an appropriation of private property to public use; and the petitioner, in common with other property holders along and on the line of the way about to be located and opened, was contesting the constitutional right of the city to appropriate it to the public use.   As soon as this was settled by this court, in the case of the city of Pittsburgh against Scott, reported in 1 Barr, 314, he proceeded as

promptly as possible. But in the next place, although the act of the 31st March, 1836, authorizing the location and opening of Duquesne Way, requires the report to be made to the next term, we contend that we were in time. They argued, that *" next term,"* in the act, meant the *next term after the jury had acted, after they had made their assessment of damages.* It does not mean, *the next term after the application for the appointment of the jury.*

*C. B. M. Smith,* for the city. The question is, did Teese pursue his remedy under the act already cited, in due time, and with due diligence. He contended that he had not, and had thereby lost his right to damages. It was considered of great importance, that councils should know the amount of damages that would be assessed and claimed before they proceeded to open the way. If the damages claimed and assessed had been very heavy, it would then have been a question of prudence whether to open the way or not. Hence the act very properly required those citizens who intended to apply for damages, to act promptly, and that the report of the jury should be filed to the next term. In the case of the death of a juror, the court had the power of supplying the vacancy. Teese, instead of being injured, has been benefitted. After the decision in the case of the city of Pittsburgh against Scott, there was no difficulty in getting the jury together.

*Sept.* 29. ROGERS, J.—The court was clearly right in sustaining the exceptions to the report. By the terms of the order, drawn in pursuance of the express directions of the act, it was the duty of the viewers to make report to the June Term, 1839, that being the next term of the Court of Quarter Sessions, after they were appointed. If from any unforeseen causes that was impracticable, the proper and only course was to apply to the court to continue the order. The power being spent, must be either renewed by a new order, or the old one continued. This is, or ought to be, the practice of all courts, whether Orphans' Courts, or Courts of Quarter Sessions. It is a practice that cannot be departed from without danger to the rights of suitors. Here, the petitioner, for reasons of which we have no satisfactory explanation, omitted to do so. The city, therefore, had a right to suppose all idea of obtaining compensation for the alleged injury was abandoned, and to act accordingly; and we find they did so by proceeding, without further delay, to commence the work. The legislature evidently intended to do justice to the owners by giving them an adequate, and at the same time speedy compensation for any damages they might sustain, by reason of opening the

way. They direct that the damages shall be ascertained in a short time, and before the work is commenced, in order that the city councils may determine, (and that within a reasonable time,) whether they will encounter the expense which must necessarily attend the work. The damages are to be ascertained and paid as a prerequisite to its commencement. The owners of lots who may consider themselves injured, have liberty to apply by petition to the next Court of Quarter Sessions, (but not after,) following a notice which the councils of the city are ordered to give of the location and intended opening of the way. And this construction is necessary for the security of the city, and the speedy commencement of the work; as well as a fair compensation to the owners. For if all the owners of lots had pursued the course of this petitioner, it would have postponed the commencement of this beautiful and useful improvement indefinitely, or have exposed them to a danger (which the legislature intended to prevent) of paying more for it than it was worth. It is plain that the reason of directing the owners to have their damages assessed in such a short space of time, and that the damage should be paid in the first instance, was not only to do justice to the owners, but that the city might be able to count the costs before opening the street. But this design would be frustrated, if the petitioner, under any pretence, should be able to postpone beyond the limited period, or a reasonable time thereafter, the ascertainment of their damages without an express order from the court. It is true that here the petition was presented in time, but the delay is unreasonable, and without authority. Had the petition been followed up by due and proper diligence, the petitioner would have entitled himself to damages. But this he has failed to do, an omission of which the city may without impropriety avail themselves. The general principles and facts relating to the opening of Duquesne Way are detailed and discussed in the case of the city of Pittsburgh *v.* Scott, 1 Barr, 317, *quod vide.*

The order of the Quarter Sessions confirmed.